FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 03, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL M., | No. 4:17-cv-05175-MKD |
| Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S |
| vs. | MOTION FOR SUMMARY |
| | JUDGMENT AND GRANTING |
| COMMISSIONER OF SOCIAL | DEFENDANT'S MOTION FOR |
| SECURITY, | SUMMARY JUDGMENT |
| Defendant. | |
| | ECF Nos. 15, 16 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 15, and grants Defendant's motion, ECF No. 16.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

ORDER - 1

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

ORDER - 3

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform work that he performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can adjust to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work; and 2) such work "exists in significant numbers in the

national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On May 21, 2013, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of May 16, 2013. Tr. 182-88. The application was denied initially, Tr. 119-21, and on reconsideration, Tr. 125-29. Plaintiff appeared before an administrative law judge (ALJ) on February 3, 2016. Tr. 41-79. On May 31, 2016, the ALJ denied Plaintiff's claim. Tr. 17-40.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 16, 2013. Tr. 23. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease and mood disorder. Tr. 23. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> He can occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds. He can stand and/or walk with normal breaks for a total of about 6 hours in an 8 hour workday. He can sit with normal breaks for 6 hours in an 8 hour workday. He can push and/or pull including the operation of hand and/or foot controls is unlimited, other than as shown for lifting and carrying. He can frequently climb ramps or stairs. He can occasionally climb ladders, ropes or scaffolding. He can frequently balance, stoop, kneel, crouch and crawl. He does not

have any manipulative, visual, or communication limitations.  He should avoid concentrated exposure to hazardous machinery or working at unprotected heights.  He can perform simple, routine tasks and follow short, simple instructions, and do work that needs little or no judgment.  He can perform simple duties that can be learned on the job in a short period of less than 30 days.  He can respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required.  He can deal with occasional changes in the work environment and do work that requires no contact with the general public to perform the work tasks.

Tr. 25.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 32.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, assembler/production, packing line worker, and cleaner/housekeeping.  Tr. 33.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of May 16, 2013, though the date of the decision.  Tr. 33.

On September 15, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence; and

2. Whether the ALJ conducted a proper step-five analysis.

ECF No. 15 at 10.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly rejected the opinions of Katie Karlson, M.D.; Janmeet Sahota, M.D.; Jason Roberts, ARNP; and David Martinez, M.D. ECF No. 15 at 12-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations

give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995)).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. § 404.1527 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physician assistants, and therapists. 20 C.F.R. § 404.1513(d) (2013). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*,

100 F.3d 1462, 1467 (9th Cir. 1996). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

### 1. Dr. Karlson

From March 2014 to January 2016, Dr. Karlson treated Plaintiff. Tr. 605, 652-53, 833, 1083. For Plaintiff's back pain, Dr. Karlson referred Plaintiff for a physical therapy assessment, Tr. 578-79; to physical therapy, Tr. 1009-11; for lumbar and cervical MRIs, Tr. 697-716, 1152-56; and to neurology, Tr. 1202-11. On June 25, 2015, Dr. Karlson opined that Plaintiff must alternate between sitting, standing, or walking positions throughout the workday. Tr. 1005.

The ALJ assigned this opinion little weight. Tr. 30-31. Relying on SSR 96-2p,[1] Plaintiff argues that the ALJ was required to provide clear and convincing reasons in order to reject Dr. Karlson's opinion. ECF No. 17 at 2-3. But because Dr. Karlson's opinion was contradicted by Dr. Platter, M.D.'s opinion that Plaintiff

---

[1] SSR 96-2p controlled when the ALJ issued his decision in May 2016 and therefore governs this Court's review of the ALJ's decision. However, SSR 96-2p was later rescinded, effective March 27, 2017. 82 Fed. Reg. 57 at 15263.

could stand (and/or walk) and sit for about six hours in an eight-hour workday and therefore Plaintiff did not need to alternate positions throughout the workday, Tr. 111-13, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Karlson's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Karlson's opinion because she did not cite to any medical evidence in support of the limitations she opined. Tr. 31. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d at 957. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007). Here, Dr. Karlson's June 25, 2015 letter was brief and conclusory, stating "[d]ue to [Plaintiff's] medical condition he will need to alternate his positions when he is sitting, standing, an [sic] walking throughout his work day." Tr. 1005. The ALJ was correct that Dr. Karlson did not cite any medical evidence to support her opinion. However, that Dr. Karlson's opinion was brief and conclusory is not enough by itself to discount her treating-examiner

opinion, if it was otherwise adequately supported by Dr. Karlson's medical notes. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014); *see also Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017).  Here, even if the ALJ erred by discounting Dr. Karlson's opinion because it was brief and conclusory, this error is harmless because, as is discussed below, Dr. Karlson's opinion was not supported by the more recent objective medical evidence, including imaging in 2015.  *See Molina,* 674 F.3d at 1115.

The ALJ also discounted Dr. Karlson's opinion because the objective medical evidence did not support the opinion.  Tr. 31.  An ALJ may discredit a physician's opinion that is unsupported by the record.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  An ALJ may give more weight to an opinion that is more consistent with the evidence in the record.  20 C.F.R. § 416.927(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Lingenfelter*, 504 F.3d at 1042; *Orn,* 495 F.3d at 631.  Here, while there was evidence in the record that was consistent with Dr. Karlson's opinion, *see, e.g.*, Tr. 811-13 (noting that Plaintiff is positive for neck and back pain, reduced range of lumbar and cervical range of movement, and slow and antalgic gait), there was also medical evidence that was inconsistent with Dr. Karlson's opined postural limitation.  For example, Dr. Hunter diagnosed Plaintiff's left paracentral disc protrusion at L5-S1 as improving in 2015.  Tr. 716.

Likewise, Plaintiff's bilateral lower extremity strength was 5/5. Tr. 813. Further, the recommended medical treatment for Plaintiff's conditions included intensive exercise—aerobics, jogging, and running. Tr. 975. The ALJ also noted that in December 2015 Plaintiff walked with a normal gait, and at most was shown to have mild tenderness in the lower lumbar spine. Tr. 980. It was the ALJ's responsibility to resolve conflicts and ambiguity in the evidence. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). Because the ALJ's interpretation of the record is rationale and supported by substantial evidence, the ALJ's decision to discount Dr. Karlson's opinion as inconsistent with the objective medical evidence is upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### 2. Dr. Sahota

In March and September 2013, Dr. Sahota completed Washington State Department of Labor and Industries check-the-box forms assessing that Plaintiff could perform modified duty work during the six-month period between March and September 2013. Tr. 543-44. Dr. Sahota assessed functional limitations, including lifting and carrying only five pounds occasionally and restricting sitting, standing, and walking to less than one hour each, per workday. Tr. 543-44.

The ALJ assigned Dr. Sahota's opinions little weight. Tr. 31-32. Because Dr. Sahota's opinions were contradicted by the nonexamining opinion of Dr.

Platter, Tr. 112, the ALJ was required to provide specific and legitimate reasons

for rejecting Dr. Sahota's opinions. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Sahota's opinions because they were

inconsistent with the objective medical evidence. Tr. 31-32. A medical opinion

may be rejected if it is unsupported by the record and medical findings. *Bray*, 554

F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957. Moreover, an

ALJ is not obliged to credit medical opinions that are unsupported by the medical

source's own data and/or contradicted by the opinions of other examining medical

sources. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the

ALJ had conflicting evidence to weigh. *See Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995) (recognizing it is the ALJ's role to weigh conflicting

evidence). Dr. Donald Dicken's July 2013 EMG studies, which showed a left

paracentral disc protrusion at L5-S1 contacting and mildly displacing the

traversing left S1 nerve root, partially supported Dr. Sahota's opinion. Tr. 476-80,

488, 463-65. But the ALJ discounted this aspect of the EMG studies because

imaging in May 2015 showed that Plaintiff's left paracentral disc protrusion at L5-

S1 was improving. Tr. 27, 716; *see also* Tr. 527-39, 1007-08 (Dr. Kopp's opinion

disagreeing with the 2013 EMG imaging). In addition, the ALJ highlighted that

the 2013 EMG and NCV studies specifically ruled-out radiculopathy from other

areas of the lumbar spine, lumbar sacral plexopathy, generalized peripheral

neuropathy involving either lower extremity, a myopathy involving either lower extremity, and/or a generalized motor neuron disease with either lower extremity. Tr. 463-69. The ALJ rationally decided that Dr. Sahota's opinion was inconsistent with the medical record. *See Tommasetti*, 533 F.3d at 1038. This was a specific and legitimate reason supported by substantial evidence to discount Dr. Sahota's opinions.

Second, the ALJ discounted Dr. Sahota's opinions because they appeared to be based more on Plaintiff's reports rather than on the objective medical evidence. Tr. 31-32. A physician's opinion may be rejected if it is based on a claimant's properly discounted subjective complaints. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-200 (9th Cir. 2008). Here, citing to *Ghanim*, Plaintiff argues the ALJ erred by assuming that Dr. Sahota's opinions were based solely or largely on Plaintiff's self-reports without explaining how he reached this conclusion. ECF No. 15 at 14 (citing 763 F.3d 1154). But this situation differs from *Ghanim*. In *Ghanim,* the discounted opinions discussed the providers' observations, diagnoses, and prescriptions, in addition to the claimant's self-reports. Therefore, in *Ghanim*, the

Ninth Circuit found the ALJ erred by offering no basis for his conclusion that the providers' opinions were based more heavily on the claimant's self-reports. *Id.* at 1162. In comparison, here, the check-the-box forms completed by Dr. Sahota did not discuss his observations, diagnoses, or prescriptions. Tr. 543-44. While the record contains Dr. Sahota's treatment notes, which refer to the July 2013 EMG studies, Tr. 476-80, 488, 463-65, the ALJ discounted these EMG studies based on later imaging showing Plaintiff's left paracentral disc protrusion at L5-S1 as improving. Tr. 27, 716; *see also* Tr. 527-39, 1007-08 (Dr. Kopp's opinion disagreeing with the 2013 EMG imaging). Based on the conflicting evidence, the ALJ rationally discounted Dr. Sahota's opinions as inconsistent with the medical record and therefore based more on Plaintiff's subjective allegations than the objective medical evidence. *See Tommasetti*, 533 F.3d at 1038. This was a specific and legitimate reason supported by substantial evidence to discount Dr. Sahota's opinions. Moreover, Plaintiff did not challenge the ALJ's decision to discount Plaintiff's reported symptoms, thus any challenge is waived. *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d at 1161 n.2 (determining the court may decline to address the merits of issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (recognizing that issues not "specifically and distinctly argued" on appeal in the party's opening brief may be disregarded by the court). Accordingly, the ALJ's appropriately discounted Dr.

Sahota's opinions to the extent they relied on Plaintiff's discounted reported symptoms.

In addition, Dr. Sahota opined that Plaintiff would have functional limitations for six months and therefore his opinions offered little probative value in assessing Plaintiff's eligibility for Social Security disability benefits, which focuses on Plaintiff's long-term functioning. *See Carmickle*, 533 F.3d at 1165.

Finally, the ALJ found that Dr. Sahota's functional limitations were inconsistent with Plaintiff's work activities. Tr. 32. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities or work activities after the alleged disability onset date. *Morgan*, 169 F.3d at 601-02; *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002). Here, the ALJ noted that Dr. Sahota's functional limitations, specifically that Plaintiff could seldom sit, stand, or walk during this time frame, was inconsistent with Plaintiff working modified or limited hours in November 2013. Tr. 545. This was a legitimate and specific reason for discounting Dr. Sahota's opinion.

### 3. *Mr. Roberts*

Mr. Roberts treated Plaintiff for back pain in March 2013 and then again from November 2013 to May 2014. Tr. 413-15, 492-502, 546-573. On November 26, 2013, Mr. Roberts completed an Activity Prescription Form for the Washington State Department of Labor and Industries. Tr. 545. Mr. Roberts

opined that Plaintiff could only sit, stand/walk, twist, squat/kneel, crawl, reach, and work above shoulders for up to one hour during the workday, and that Plaintiff should seldom lift or carry twenty pounds and only occasionally lift ten pounds. Tr. 545.

The ALJ assigned Mr. Roberts' opinion little weight. Tr. 32. The ALJ was required to provide germane reasons for discounting Mr. Roberts' opinion. *See Dodrill*, 12 F.3d at 918.

Plaintiff argues the ALJ's reasoning and analysis regarding Mr. Roberts' opinion is vague and non-specific. This argument is without merit. The ALJ offered the same rationale for discounting Mr. Roberts' opinion as offered for discounting Dr. Sahota's opinions. First, the ALJ discounted Mr. Roberts' opinion because it was inconsistent with the objective medical evidence. Tr. 32. A medical opinion may be rejected if it is unsupported by the medical findings and remaining record. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957. Moreover, an ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources. *Tommasetti*, 533 F.3d at 1041. Here, the ALJ noted Mr. Roberts' physical examination findings one month after Mr. Roberts' opinion reflected that Plaintiff had normal bilateral lower strength and neurovascular functioning, even though Plaintiff had decreased range of lumbar

ORDER - 18

motion and pain on his left side.  Tr. 501, 547.  Mr. Roberts prescribed a pain

reliever and recommended physical therapy and possible back injections.  Tr. 494,

498, 502, 547.  Plaintiff began physical therapy and had an epidural steroid

injunction in January 2014.  Tr. 498, 502, 554.  At his January 2014 appointment

with Mr. Roberts, which was the day after the steroid injunction, no pain was

observed in the buttocks or spine, but Plaintiff's lumbar was tender and range of

motion was limited.  Tr. 552.  At his appointment with Mr. Roberts a week later

and continuing through April 2014, Mr. Roberts observed Plaintiff with pain on the

right and left buttock and spine, along with decreased range of lumbar motion, but

found bilateral lower extremity strength and gait were normal.  Tr. 555, 558-59,

565, 572.  During an appointment in April 2014, Mr. Roberts explained to Plaintiff

that he is "by no means . . . an expert in back/spinal injuries and so [Mr. Roberts]

does consider and heed the recommendations of those experts."  Tr. 568.  Mr.

Roberts noted in his May 2014 chart notes,

> [t]here does appear to be some embellishment with pain [throughout]
> the exam, but difficult to say.  A discussion was had with [Plaintiff]
> that at this point there seems to be conflicting information between the
> [independent medical examiner] and his current neurology providers.
> At this point, it seems that I can no longer offer the patient what he is
> looking for or requesting.

Tr. 572.  It was the ALJ's role to weigh the conflicting information contained in

Mr. Roberts' examination notes, and further weigh this information against the

remainder of the record, including Mr. Roberts' own concession that he was not an expert in back and spine injuries. Tr. 568. The ALJ's decision to discount Mr. Roberts' opinion because it was inconsistent with the objective medical evidence was a rationale, germane reason and supported by substantial evidence. Contrary to Plaintiff's suggestion, there was no need for the ALJ to recontact Mr. Roberts to clarify his opinion. ECF No. 17 at 5.

Second, the ALJ discounted Mr. Roberts' opinion because it was based more on Plaintiff's reports than on the objective medical evidence. Tr. 32. An ALJ may discredit a medical opinion that is unsupported by the record and is more based on a claimant's properly discounted subjective complaints. *Batson*, 359 F.3d at 1195; *Tonapetyan*, 242 F.3d at 1149; 20 C.F.R. § 416.927(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). As discussed above, Mr. Robert's opinion was inconsistent with the objective medical evidence and therefore was based more on Plaintiff's properly discounted subjective complaints. Moreover, Plaintiff did not challenge the ALJ's decision to discount Plaintiff's reported symptoms, thus any challenge is waived. *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000. Accordingly, the ALJ's appropriately discounted Mr. Roberts' opinion to the extent it relied on Plaintiff's discounted reported symptoms.

Next, the ALJ found Mr. Roberts' opinion inconsistent with Plaintiff's work activities. Tr. 32. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities and work after the alleged disability onset date. *Morgan*, 169 F.3d at 601-02; *Moore*, 278 F.3d at 925. Here, the ALJ noted that Mr. Roberts' opinion that Plaintiff could seldom sit, stand, or walk was inconsistent with Plaintiff working modified or limited hours in November 2013. Tr. 545. This was a germane reason for discounting Mr. Roberts' opinion.

### 4. Dr. Martinez

In February 2013, three months before the alleged disability onset date, Dr. Martinez examined Plaintiff for back pain. Tr. 410-12. Dr. Martinez noted that Plaintiff had a tender cervical, thoracic, and lumbar spine, with mildly reduced range of movement in his cervical and thoracic areas, and moderate pain in his lumbar region. Tr. 411. Dr. Martinez diagnosed Plaintiff with unspecified neuralgia, neuritis, and radiculitis; a lumbosacral sprain; and degenerative disk disease. Tr. 411. Dr. Martinez recommended that Plaintiff be seen by neurosurgery, prescribed pain killers, and opined that Plaintiff was unable to return to work. Tr. 411.

Plaintiff argues the ALJ erred by failing to consider Dr. Martinez's statement that Plaintiff was unable to work. ECF No. 15 at 16. This argument is unpersuasive. A statement by a medical source that a claimant is "unable to work"

is not a medical opinion and is not due "any special significance." 20 C.F.R. §

416.927(d). Nevertheless, the ALJ was required to "carefully consider medical

source opinions about any issue, including [an] opinion about issues that are

reserved to the Commissioner," to determine the extent to which the opinion is

supported by the record after considering the applicable § 404.1527(d) factors.

SSR 96-5p at *2-3. Here, Dr. Martinez's statement that Plaintiff was unable to

work predated Plaintiff's alleged disability onset and was neither explained by Dr.

Martinez nor supported by an accompanying medical note. Tr. 410-12. Based on

this medical record, the ALJ did not err in failing to discuss Dr. Martinez's "unable

to return to work" statement. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th

Cir. 1984) (recognizing that the ALJ is not required to discuss every piece of

evidence in the record); *Carmickle*, 533 F.3d at 1165 (recognizing that medical

opinions predating the alleged onset date are of limited relevance to the ALJ's

disability determination).

**B. Step Five**

Plaintiff contends the ALJ's hypothetical failed to account for all of

Plaintiff's physical and mental limitations. ECF No. 15 at 16-19.

The ALJ's hypothetical must be based on medical assumptions supported by

substantial evidence in the record that reflect all of the claimant's limitations.

*Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001); *Bray*, 554 F.3d at 1228.

ORDER - 22

The hypothetical must be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id*. However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Osenbrook*, 240 F.3d at 1164-65. When the record demonstrates evidence was properly rejected, a claimant fails to establish that a step-five determination is flawed by simply restating an argument that the ALJ improperly discounted that evidence. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

### 1. Exertional Limitations

Plaintiff argues that by improperly rejecting the opinions of Dr. Karlson and Mr. Roberts the ALJ failed to incorporate all of Plaintiff's exertional limitations into the RFC and resultantly the hypothetical did not contain all of Plaintiff's limitations. ECF No. 15 at 18-9. This is a restatement of Plaintiff's argument that the ALJ improperly discounted Dr. Karlson's and Mr. Roberts' opinions, which is insufficient. *See Stubbs-Danielson*, 539 F.3d at 1175-76. The ALJ fully considered the medical evidence and rationally incorporated the supported exertional limitations into the RFC. Tr. 25. The assessed functional limitations were supported by substantial evidence in the record and were included in the

hypothetical posed to the vocational expert. Tr. 72-73; *see Osenbrook*, 240 F.3d at 1165. As to Plaintiff's exertional residential functional capacity, the ALJ's hypothetical was supported by the medical record and the ALJ reasonably relied on the vocational expert's testimony to conclude Plaintiff could perform other work available in the national economy.

### 2. Nonexertional limitations

#### i. Dr. Barnard

Plaintiff argues the ALJ's hypothetical failed to include Philip Barnard, Ph.D.'s accepted nonexertional limitations. ECF No. 15 at 16-18.

On December 2, 2014, Dr. Barnard conducted a psychological assessment, including an interview, psychological tests, and a clinical history review, of Plaintiff. Tr. 599-604. Dr. Barnard diagnosed Plaintiff with traumatic brain injury, a mood disorder, and attention deficits. Tr. 602. Dr. Barnard noted that, while Plaintiff had anger management problems, Plaintiff appeared to be successfully dealing with his anger issues. Tr. 602. Dr. Barnard opined that Plaintiff may have difficulty with individuals in position of authority, was likely to experience interpersonal relationship problems, and had difficulty sustaining attention and concentration. Tr. 603. As to Plaintiff's ability to comply with treatment or develop a therapeutic relationship, Dr. Barnard stated that Plaintiff's acting-out tendencies could result in treatment noncompliance and interfere with the

development of a therapeutic relationship. Tr. 603. Due to Plaintiff's irritability, Dr. Barnard stated that it was unlikely that Plaintiff would be able to sit down for a fifty-minute counseling session without becoming bored, irritable, and angry, and that Plaintiff would need to participate in an individual psychotherapy program for at least six months to establish emotional stability. Tr. 603. As to Plaintiff's exertional abilities, Dr. Barnard opined that Plaintiff would need frequent positional changes. Tr. 603. Dr. Barnard also opined that, if Plaintiff's pain was adequately treated, Plaintiff could return to security work. Tr. 603.

The ALJ gave partial weight to Dr. Barnard's opinion that Plaintiff could return to work if his pain was adequately treated, little weight to Dr. Barnard's exertional-limitation opinion, and accepted Dr. Barnard's opinion that Plaintiff would have difficulty socially and with maintaining concentration, persistence, and pace. Tr. 30. Because the ALJ accepted Dr. Barnard's opinion about Plaintiff's social, concentration, persistence, and pace difficulties, this aspect of Dr. Barnard's opinion was required to be incorporated into the RFC. *See Osenbrook*, 240 F.3d at 1165.

To ensure an accurate hypothetical to the vocational expert, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945. The RFC assessment includes a claimant's physical abilities, mental abilities, and other abilities affected by impairments. 20 C.F.R. § 416.945(a-e). "A limited ability to

carry out certain mental activities, such as limitation in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce" the claimant's ability to work. 20 C.F.R. § 416.945(c). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174.

Plaintiff asserts that the ALJ's hypothetical and the RFC failed to account for Dr. Barnard's concentration, persistence, and pace limitations and social-interaction limitations. ECF No. 15 at 17. Plaintiff submits the ALJ failed to consider Dr. Barnard's opinion that Plaintiff was impatient, easily distracted, irritable, did not wait for full instructions, had issues related to inattentiveness and sustained attention, may have difficulty with individuals in positions of authority, and is likely to experience conflict in interpersonal relationships. ECF No. 15 at 17 (citing Tr. 600-03). Here, the ALJ rationally incorporated Dr. Barnard's opinion as to Plaintiff's limited concentration, persistence, and pace by limiting Plaintiff to simple, routine tasks with short, simple instructions, which required little or no judgment, and could be learned on the job in a short period of less than

thirty days.  Tr. 25.  The ALJ also adequately incorporated Dr. Barnard's opinion,

to the extent it was sufficiently concrete, as to Plaintiff's social-interaction

abilities.  For instance, the ALJ incorporated Dr. Barnard's opinion that Plaintiff is

likely to experience conflictual interpersonal relationships by limiting Plaintiff to

work that did not require close coordination with coworkers where teamwork was

required and that had no contact with the public.  Tr. 25.  Plaintiff has not

demonstrated that Dr. Barnard's statement that Plaintiff "may have difficulty with

positions in authority" required any additional limitations than those assessed in

the RFC.  The RFC limiting Plaintiff to work that required short, simple

instructions and could be learned on the job in a short period of less than thirty

days, thereby minimizing any contact that Plaintiff would have with a supervisor,

adequately addresses this vague and non-specific statement.  Dr. Barnard's

statements about Plaintiff's irritability and anger related to his ability to behave

during counseling sessions and were not functional work limitations.  Therefore,

these counseling-related limitations need not have been included in the RFC.  *See*

*Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (finding the ALJ

appropriately found that the medical opinion neither assigned any specific

limitations nor stated that the claimant was unable to work with little interpersonal

interaction).  Finally, Dr. Barnard opined that Plaintiff could return to work once

his pain was under control.  Tr. 603.  Here, the ALJ noted that Plaintiff had already

ORDER - 27

returned to security work before the ALJ had issued his decision, thereby discounting Dr. Barnard's opinion that if adequately treated Plaintiff could return to security work. Tr. 30. The posed hypothetical and the RFC adequately captured Dr. Barnard's opined functional work limitations to the extent they were definite and supported by the record. Tr. 72-74.

### ii. Dr. Orr

Plaintiff argues that the ALJ's hypothetical failed to account for Dr. Orr's statements about Plaintiff's significant interpersonal difficulties. ECF No. 15 at 18. In September 2013, Lynn Orr, Ph.D., conducted a consultative mental status examination of Plaintiff. Tr. 454-60. Dr. Orr diagnosed Plaintiff with bipolar II disorder and significant history of chemical dependency and abuse of pain medication. Tr. 459. Dr. Orr stated that Plaintiff demonstrated a low interpersonal tolerance. Tr. 459. Dr. Orr opined that Plaintiff's insight was limited. Tr. 457. Dr. Orr also stated that Plaintiff:

> appeared to have adequate ability to use reasoning in solving problems and assessing situations. He, however, tends to be somewhat impulsive with occasional erratic behaviors. He tends to be frequently agitated. He appeared to understand all information. Adaptation is difficult for [Plaintiff]. He tends to be somewhat rigid with expectations of how things should be. This brings him into conflict on frequent occasions when interacting with other people.

Tr. 459.

ORDER - 28

The ALJ assigned significant weight to Dr. Orr's opinion. Tr. 30. Because the ALJ accepted Dr. Orr's opinion, the opinion was required to be incorporated into the RFC and included in the posed hypothetical. *See Osenbrook*, 240 F.3d at 1165. Here, the hypothetical sufficiently incorporated Dr. Orr's opined functional limitations. Even though Dr. Orr discussed Plaintiff's low-stress tolerance and interpersonal difficulties, Dr. Orr also highlighted that Plaintiff "continue[d] to work part time on an all call basis" and Plaintiff's "emotional state does not keep him from being consistent in carrying out tasks in a work-like setting." Tr. 458. The ALJ rationally weighed Dr. Orr's opinion and found it consistent with the hypothetical and RFC that limited Plaintiff to simple, routine tasks, with short, simple instructions; work that required little or no judgment; appropriate interaction with supervisor; no close coordination with coworkers where teamwork is required; occasional changes in the work environment, and no contact with the general public. Tr. 25, 72-74.

Plaintiff has not demonstrated the ALJ erred in the step five findings.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

3. The Clerk's Office is to enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED January 3, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 30